**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

**LETTER OPINION**

August 28, 2008

Frank P. Arleo
Arleo & Donohue, LLC
Penn Federal Building
622 Eagle Rock Avenue
West Orange, NJ 07052

Kathleen C. Goger
Singer & Goger, Esqs.
Renaissance Tower
111 Mulberry Street
Newark, NJ 07102

    (*Counsel for Plaintiffs*)

Joseph Ives Picillo
Office of the NJ Attorney General
RJ Hughes Justice Complex
PO Box 116
Trenton, NJ 08625-0116

Alan J. Baratz
Weiner Lesniak
629 Parsippany Road
Post Office Box 438
Parsippany, NJ 07054-0438

Ronald A. Berutti
Weiner Lesniak, LLP
629 Parsippany Road
Post Office Box 438
Parsippany, NJ 07054-0438

    (*Counsel for Defendant*s)

    **RE:**    <u>**Ciardiello v. Sexton**</u>
            <u>**Civ. No. 06-4007 (WJM)**</u>

Dear Counsel:

    Defendants move on summary judgment for dismissal of all Plaintiffs' claims. Except with respect to a few less consequential claims, the Court finds such dismissal inappropriate in light of the existence of many genuine issues of material fact. Accordingly, Defendants' motions are **GRANTED IN PART** and **DENIED IN PART**.

**I.**    **FACTS**

    This case centers about Defendants' allegedly false arrest of Plaintiff Maura Ciardiello. Plaintiffs, Maura and her husband, Robert, claim that Defendants, police officers and a municipality, falsely arrested her and assert many causes of action against Defendants arising out the allegedly false arrest. Defendants respond that they properly arrested Maura.

    The arrests resulted from allegations by one of the Defendants that Maura was mistreating her dog, Rusti. Maura had driven to a supermarket with her dog. While shopping, Maura left the dog in her car. Defendant Stephen Sexton, an off-duty New Jersey Department of Human Services police officer, witnessed this and believed Maura was committing animal cruelty. He accordingly called the local police, in Woodbridge Township, and waited for Maura to return.

    It is what occurred upon Maura's return that gives rise to Plaintiffs' claims. Defendant Sexton approached Maura to confront her about leaving Rusti in the car, and the two began to argue. Maura became increasingly alarmed as Defendant Sexton was

not in uniform.  Sexton flashed his badge but too quickly to convince Maura he was a police officer.  Fearing an assault, Maura ran into her car and closed the door.  Sexton, believing that Maura intended to flee, ripped the car door open, threw Maura out and up against her car, and restrained her in an arm hold of some kind.  Sexton acted with such force that he broke one of Maura's ribs and chipped one of her teeth.[1]  While restraining Maura, Defendant Sexton asked a bystander to call the Woodbridge Township police and notify them that a police officer needed assistance.

Shortly thereafter, Defendant Francis Gagnon, a Woodbridge police officer, arrived and relieved Defendant Sexton.  Gagnon handcuffed Maura, placed her in his squad car, and took her to the police station for processing.  Sexton left the scene shortly after Gagnon and Maura.

After Defendant Gagnon took Maura away and Defendant Sexton had left, another unfortunate event occurred.  A Woodbridge police officer who remained at the scene, Officer Dando, entered Maura's car to search for identifying information.  At the same time, an animal control officer, who had been called to investigate the situation with Rusti, opened another door of Maura's car, and Rusti ran out.[2]  Rusti ran out into oncoming traffic, where he was struck and killed by a motorist.

Defendant Sexton, believing Maura was at fault for the altercation, filed several criminal complaints against Maura.  In these complaints, Sexton alleged that Maura had committed the crimes of obstruction of justice, aggravated assault, and animal cruelty.  These charges against Maura were eventually dismissed.

## II.  PROCEEDINGS

Based on the aforementioned facts, Maura and her husband, Robert, filed this suit against Sexton, Gagnon, and the Township of Woodbridge.[3]  Currently, Plaintiffs allege the following claims: (1) claims against all three Defendants under 42 U.S.C. § 1983 for false arrest, excessive force, and malicious prosecution (count one of the amended

---

[1] Defendants claim that Maura's rib was bruised, not broken.

[2] It is not clear which officer, Officer Dando or the animal control officer, is responsible for Rusti's escape.

[3] Plaintiffs also sued the New Jersey State Police and the State of New Jersey Department of Human Services but are no longer pursuing claims against these Defendants.

complaint), (2) a state law assault claim against Sexton (count two), (3) state law claims of false arrest against all three Defendants (count four), (4) a state law claim against Sexton for malicious prosecution (count five), (5) state law claims against all Defendants for negligent or intentional infliction of emotional distress (count seven), (6) claims against Woodbridge Township for failure to train or supervise Defendant Gagnon, under § 1983 and the New Jersey Civil Rights Act ("NJCRA") (count eight), (7) claims against Woodbridge for maintaining an illegal policy or custom, under § 1983 and the NJCRA (count nine), (8) a state law claim for negligent training against Woodbridge (count ten), (9) a state law claim of negligence against Woodbridge pertaining to Rusti's death (count eleven),[4] and (10) a state law claim against all Defendants for Robert Ciardiello's loss of his wife's consortium (count twelve).[5]

Defendants now move for summary judgment. They seek dismissal of all claims.

**III.   DISCUSSION**

Federal Rule of Civil Procedure 56(c) allows a court to grant summary judgment for a party on a claim if there are no disputes of fact material to the disposition of that claim and it is clear that the party is entitled to judgment as a matter of law. On a motion for summary judgment, courts will view the facts in the light most favorable to the non-movant. Tse v. Ventana Med. Sys., Inc., 297 F.3d 210, 218 (3d Cir. 2002). The non-moving party may not simply rest on allegations in the pleadings; she must present sufficient evidence to create a genuine issue of material fact with respect to her claims, that is, sufficient evidence to allow a jury to find in her favor. GFL Advantage Fund, Ltd. v. Colkitt, 272 F.3d 189, 199 (3d Cir. 2001).

It is expedient, for reasons that the opinion will shortly make clear, to discuss these claims in three groups: (1) claims arising directly from the allegedly improper arrest and prosecution of Maura (counts one, two, four, five, seven, and twelve), (2) claims arising from Woodbridge's allegedly negligent training and supervision (counts eight, nine, and ten), and (3) Plaintiffs' negligence claim against Woodbridge arising out of Rusti's death (count eleven).

---

[4]Plaintiffs appear to assert this claim against all Defendants, but the Court cannot fathom how Plaintiffs purport to hold Defendants Sexton or Gagnon liable for Rusti's death.

[5]Plaintiffs have agreed to dismiss the remaining claims, specifically, counts three and six.

### A. Claims Directly Arising from the Allegedly Improper Arrest and Prosecution of Maura (Counts One, Two, Four, Five, Seven, and Twelve)

The Court generally finds that summary judgment is inappropriate for Plaintiffs' claims arising from the allegedly improper arrest and prosecution of Maura (with two exceptions, discussed below). These claims will all rise or fall on a factfinder's determination of what happened between Maura and Defendant Sexton, specifically whether Maura committed the crimes of animal cruelty or resisting arrest in Sexton's presence and if so whether Sexton used appropriate force to restrain Maura.[6] These factual questions are hotly disputed in this case and are thus properly the province of a jury, not summary judgment. Accordingly, summary judgment is generally inappropriate for these counts.

However, the Court finds two exceptions. First, the Court dismisses the § 1983 claims (in count one) against Defendant Woodbridge Township. These claims are only tenable if Plaintiffs can establish that Defendant Gagnon acted tortiously pursuant to some official Woodbridge policy or custom. Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 691, 694 (1978). Plaintiffs have not offered evidence of any such policy, so dismissal of those counts is warranted on summary judgment. Note that Woodbridge is still subject to respondeat superior liability on Plaintiffs' state claims. N.J. Stat. Ann. § 59:2-2; O'Brien v. Borough of Woodbury Heights, 679 F. Supp. 429, 439 (D.N.J. 1988). Second, the Court dismisses Plaintiffs' claims for negligent or intentional infliction of emotional distress against Defendants Gagnon and Woodbridge. These claims are only tenable if Plaintiffs can show that Defendants engaged in extreme or outrageous conduct and intentionally or recklessly caused Plaintiffs severe emotional distress. See O'Brien,

---

[6]Claims for false arrest against an officer generally depend upon whether the officer had probable cause to believe that the plaintiff was committing a crime. See Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir. 1988); Mesgleski v. Oraboni, 748 A.2d 1130, 1138–40 (N.J. Super. Ct. App. Div. 2000). Claims for assault or excessive force against an arresting officer generally depend upon whether an officer's use of force was reasonably necessary. See Graham v. Connor, 490 U.S. 386, 396 (1989); State v. Mulvihill, 253 A.2d 175, 177–78 (N.J. Sup. Ct. App. Div. 1969). Claims for malicious prosecution generally depend upon whether the defendant who filed a criminal complaint against the plaintiff had probable cause to believe the plaintiff had committed the violation charged. See Camiolo v. State Farm Fire & Cas. Co., 334 F.3d 345, 362–63 (3d Cir. 2003); Epperson v. Wal-Mart Stores, Inc., 862 A.2d 1156, 1160 (N.J. Super. Ct. App. Div. 2004).

679 F. Supp. at 439. While Defendant Sexton's conduct might qualify, no reasonable jury could find that Defendant Gagnon's conduct was extreme or outrageous, so dismissal of count seven against Defendants Gagnon and Woodbridge is warranted.

In summary, with respect to counts one, two, four, five, seven, and twelve of Plaintiffs' amended complaint, the Court dismisses count one against Defendant Woodbridge Township and dismisses count seven against Defendants Gagnon and Woodbridge. The Court otherwise declines to dismiss any of these other counts.[7]

> **B.    Claims Arising from Woodbridge's Allegedly Illegal Customs or Policies (Counts Eight, Nine, and Ten)**

The Court dismisses Plaintiffs' claims arising from Woodbridge's allegedly illegal customs or policies, specifically, counts eight, nine, and ten. Plaintiffs have offered no evidence of such customs or policies and have thus not met their minimal burden on summary judgment to produce evidence from which a reasonable factfinder could rule in Plaintiffs' favor on those claims. See Colkitt, 272 F.3d at 199.

> **C.    Plaintiffs' Negligence Claim Arising from Rusti's Death (Count Eleven)**

The Court declines to dismiss Plaintiffs' claim of negligence arising from Rusti's death. Plaintiffs have put forth sufficient evidence for a reasonable jury to find that Rusti's death was the result of Officer Dando's negligence in failing to ensure that Rusti was properly secured in the car. And if Officer Dando or another Woodbridge Police Officer was negligent, Plaintiffs may hold Defendant Woodbridge Township liable on a respondeat superior theory, as they seek to do. See O'Brien, 679 F. Supp. at 439. Accordingly, the Court declines to dismiss count eleven of Plaintiffs' amended complaint.[8]

**IV.    CONCLUSION**

---

[7] Defendants do not make any argument specific to count twelve, Robert Ciardiello's claim for loss of Maura's consortium, so the Court does not analyze this claim separately on its merits.

[8] The Court notes that any recovery for Plaintiffs' loss of Rusti will be small, limited only to Rusti's replacement value. See Harabes v. Barkery, Inc., 791 A.2d 1142, 1146 (N.J. Super. Ct. L. Div. 2001) ("Public policy considerations prevent pet owners from recovering emotional distress and loss of companionship damages in connection with the loss of a pet dog.").

6

In conclusion, the Court dismisses count one against Defendant Woodbridge Township only, dismisses count seven against Defendants Gagnon and Woodbridge Township only, and dismisses counts eight, nine, and ten against all Defendants. Accordingly, Defendants' motions are **GRANTED IN PART** and **DENIED IN PART**. An Order accompanies this Letter Opinion.

s/ William J. Martini
**William J. Martini, U.S.D.J.**