# UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ  07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

## **LETTER OPINION**

November 5, 2008

Frank P. Arleo
Arleo & Donohue, LLC
Penn Federal Building
622 Eagle Rock Avenue
West Orange, NJ 07052

Kathleen C. Goger
Singer & Goger, Esqs.
Renaissance Tower
111 Mulberry Street
Newark, NJ 07102

    (*Counsel for Plaintiffs*)

Joseph Ives Picillo
Office of the NJ Attorney General
RJ Hughes Justice Complex
PO Box 116
Trenton, NJ 08625-0116

Alan J. Baratz
Weiner Lesniak
629 Parsippany Road
Post Office Box 438
Parsippany, NJ 07054-0438

Ronald A. Berutti
Weiner Lesniak, LLP

629 Parsippany Road
Post Office Box 438
Parsippany, NJ 07054-0438

    (*Counsel for Defendant*s)

    **RE:**  **Ciardiello v. Sexton**
           **Civ. No. 06-4007 (WJM)**

Dear Counsel:

    Defendants Francis Gagnon and the Township of Woodbridge move for reconsideration of this Court's partial denial of their motion for summary judgment. Specifically, Defendants argue that this Court's August 28, 2008 Letter Opinion suggests that consideration was not given to their qualified immunity argument. The Court disagrees, and Defendants' motion for reconsideration is **DENIED**. To assist the parties, however, the Court will take this opportunity to provide a more detailed explanation of its reasons for not granting summary judgment on qualified immunity.

**I.**    **FACTS**

    Since the facts are well-known to the parties at this point, the Court will discuss them only briefly here.

    This case stems from the arrest of Maura Ciardiello in a ShopRite parking lot in Woodbridge, New Jersey. An off-duty plain clothes New Jersey Department of Human Services officer, Stephen Sexton, approached Ciardiello about a dog left unattended in her car. (Goger Cert., Ex. 4 at 153-154; Berlutti Cert., Ex. B at 2) In the process of pushing Ciardiello against her vehicle, Sexton broke her rib[1] and one of her teeth. (Goger Cert., Ex.1 at 39; Berlutti Cert., Ex. B at 3.) Shortly thereafter, Francis Gagnon, a Woodbridge officer, responded to the scene and gave Sexton handcuffs to use on Ciardiello. (Goger Cert., Ex. 1 at 38; Berlutti Cert., Ex. M at 34.) Later, Gagnon drove Ciardiello to the police station, where he processed her. (Goger Cert., Ex. 1 at 41, 43; Berlutti Cert., Ex. M at 41, 54.) At some point, an officer (either from Woodbridge or

---

    [1] Defendants contend that Ciardello's ribs were "severely bruised," not broken. (Def. Br. in Support of Mot. for Summ. J. at 5; *see also* Berlutti Cert. Ex. B at 3.)

animal control) opened the door to Ciardiello's car, allowing her dog to escape. (Amended Compl. ¶ 22.) The dog was later hit by a car and killed. (Amended Compl. ¶ 22.)

## II. PROCEEDINGS

Ciardiello and her husband, Robert, filed suit against Sexton, Gagnon, and the Township of Woodbridge, alleging the following:

- Count One – a Section 1983 claim for false arrest, excessive force, and malicious prosecution against Sexton, Gagnon, and Woodbridge;
- Count Two – a state law assault claim against Sexton;
- Count Four – state law claims of false arrest against all three Defendants;
- Count Five – a state law claim against Sexton for malicious prosecution;
- Count Seven – state law claims against all Defendants for negligent or intentional infliction of emotional distress;
- Count Eight – claims against Woodbridge Township for failure to train or supervise Defendant Gagnon, under Section 1983 and the New Jersey Civil Rights Act ("NJCRA");
- Count Nine – claims against Woodbridge for maintaining an illegal policy or custom, under § 1983 and the NJCRA;
- Count Ten – a state law claim for negligent training against Woodbridge;
- Count Eleven – a state law claim of negligence against Woodbridge pertaining to Rusti's death; and
- Count Twelve – a state law claim against all Defendants for Robert Ciardiello's loss of his wife's consortium.[2]

Defendants Gagnon and Woodbridge then moved for summary judgment on all claims asserted against them. On August 28, 2008, this Court granted summary judgment to Gagnon on Count Seven and to Woodbridge on Counts One, Seven, Eight, Nine, and Ten.

Defendants Gagnon and Woodbridge now move for reconsideration of this Court's

---

[2] Plaintiffs have agreed to dismiss the remaining claims, specifically, Counts Three and Six.

denial of summary judgment as to Counts One, Four, Seven, Eight and Twelve.[3]

## III. DISCUSSION

Defendants Gagnon and Woodbridge argue that this Court failed to consider their qualified immunity argument in its treatment of the motion for summary judgment. The Court disagrees; however, to aid the parties, the Court will provide a fuller explanation of its reasons for finding Gagnon and Woodbridge not entitled to qualified immunity.

### A. Motion for Reconsideration Standard

The "purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). Reconsideration of a judgment is an extraordinary remedy, to be granted sparingly, "and only when 'dispositive factual matters or controlling decisions of law' were brought to the court's attention but not considered." *P. Schoenfeld Asset Management LLC v. Cendant Corp.*, 161 F.Supp.2d 349, 353 (D.N.J. 2001) (quoting *Pelham v. United States*, 661 F. Supp. 1063, 1065 (D.N.J. 1987)); *see also Arista Records, Inc. v. Flea World, Inc.*, 356 F.Supp.2d 411, 416 (D.N.J. 2005). A motion under Local Rule 7.1(i) requires the moving party to "set[] forth concisely the matter or controlling decisions which the party believes the [court] has overlooked." L. Civ. R. 7.1(i). Such a motion "may not be used to relitigate old matters, nor to raise arguments or present evidence that could have been raised prior to the entry of judgment." *P. Schoenfeld Asset Management*, 161 F.Supp.2d at 352.

Here, Gagnon and Woodbridge have set forth concisely the issue that they believe the Court has overlooked – the application of qualified immunity. The Court declines, however, to grant reconsideration of the remaining counts, as it considered – and rejected – the qualified immunity argument advanced by Defendants. As was highlighted in its August 28, 2008 Letter Opinion, there are several factual questions remaining in this case. These factual questions pertain to the individual counts, as well as to the application of qualified immunity. Given these factual issues – and their pertinence to the

---

[3] Strangely, Defendants Gagnon and Woodbridge each seek reconsideration of counts on which they prevailed – Gagnon seeks reconsideration of this Court's granting of summary judgment on Count Seven and Woodbridge seeks reconsideration of Counts One, Seven, and Eight. Since these Counts were dismissed by the Court on August 28, 2008, the Court now will focus on qualified immunity as it pertains to the remaining counts – Counts One (Gagnon only), Four, and Twelve – in the instant motion for reconsideration.

4

issue of qualified immunity, as explained below – summary judgment would be inappropriate at this juncture.  As such, the Court declines to reconsider its previous denial of summary judgment but will discuss qualified immunity for the benefit of the parties.

### B. Qualified Immunity – Gagnon

As the United States Supreme Court explained in *Anderson v. Creighton*, whether a government actor, such as Gagnon, "may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken."  483 U.S. 635, 639 (1987) (citations omitted). Accordingly, Gagnon would be entitled to qualified immunity "if a reasonable officer could have believed that probable cause existed" for an arrest "in light of clearly established law and the information the [arresting] officers possessed."  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *Blaylock v. City of Philadelphia*, 504 F.3d 405, 411 (3d Cir. 2007).  The facts known to Gagnon are relevant to this inquiry, while his subjective motivation for making the arrest is not.  *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

Where a police officer makes an arrest on the basis of oral statements by fellow officers, he "will be entitled to qualified immunity from liability in a civil rights suit for unlawful arrest provided it was objectively reasonable for him to believe, *on the basis of the statements* that probable cause for the arrest existed."  *Rogers v. Powell*, 120 F.3d 446, 455 (3d Cir. 1997) (emphasis added).

Here, application of the qualified immunity doctrine to Gagnon turns on whether it was objectively reasonable for Gagnon to believe there was probable cause for Ciardiello's arrest.  Given the facts in the record, however, this Court cannot find that Gagnon's belief was reasonable.  Below are facts that are not in dispute between the parties:

- Gagnon received a radio call in his car to report to the ShopRite, for what was initially characterized by the dispatcher as a lockout.  (Goger Cert., Ex. 7 at 19; Berlutti Cert., Ex. M at 19.)
- When he drove up to the ShopRite parking lot, Gagnon saw someone in plain clothes, whom he recognized as a former Woodbridge officer, pinning Ciardiello against an SUV.  (Goger Cert., Ex. 7 at 35-36; Berlutti Cert., Ex. M at 35-36.)
- After this, Gagnon gave Sexton a pair of handcuffs.  (Goger Cert., Ex. 1 at 38; Berlutti Cert., Ex. M at 34)
- Someone cuffed Ciardiello.  (Goger Cert., Ex. 7 at 38; Berlutti Cert., Ex. C at 31.)

- Ciardiello was taken to the station. (Goger Cert., Ex. 1 at 41; Berlutti Cert., Ex. M at 41.)

It is the gaps in these facts, created both by factual disputes between the parties and an absence of evidence in the record, that give this Court pause in its qualified immunity analysis on summary judgment. While Gagnon contends that Sexton's oral statements, coupled with his own observations of the scene, were sufficient to establish probable cause, the facts as they currently stand cannot lead the Court to this conclusion. Because of this, the Court cannot hold that Defendant Gagnon satisfies the qualified immunity test for the purposes of summary judgment.

      *i.*     *Sexton's Oral Statements to Gagnon at the Scene*

As noted, *infra*, for qualified immunity to apply where one officer makes an arrest based on the oral statements of another officer, it must be objectively reasonable for the first officer to believe, based on those statements, that probable cause existed for the arrest. *Rogers*, 120 F.3d at 455. Here, the record is unclear as to what Sexton said to Gagnon and when. *Contra Rogers*, 120 F.3d at 456 (holding that officers who transported suspect already in custody were entitled to qualified immunity where the arresting officer conveyed to them the basis for the arrest). Given the importance of Sexton's oral statements to the qualified immunity determination and the lack of clarity in the record regarding these statements, the Court determines that Gagnon is not entitled to qualified immunity.

Defendant Gagnon initially stated that upon his arrival, Sexton simply told him to arrest Ciardiello and cuff her. (Berlutti Cert. Ex. M at 34.) Later, Gagnon revised this statement to say that he *believed* Sexton said that the arrest was for obstruction. (Berlutti Cert. Ex. M at 57) (emphasis added). Gagnon did not establish, however, when Sexton provided this information. Was it before Gagnon handed Sexton the handcuffs and arrested Ciardiello? While Ciardiello sat in the squad car in handcuffs? Or was it back at the police station? Under *Rogers*, the objective reasonableness of Gagnon's belief in probable cause hinges on whether he received a clear statement from Sexton prior to the arrest that allowed him to believe that probable cause existed. *See Rogers*, 120 F.3d at 455-56 (holding that officer who "never received a clear statement from a fellow law enforcement officer confirming the existence of probable cause for the suspect's arrest" was not entitled to qualified immunity). The record is unclear as to whether Gagnon learned sufficient information as to the basis for the arrest prior to taking Ciardiello into custody to believe there was probable cause. As such, Gagnon is not entitled to qualified immunity.

6

*ii.     Gagnon's Observations*

Gagnon asserts another basis for his belief in the propriety of Ciardiello's arrest. He points to his own observations as evincing the reasonableness of his probable cause determination. Given the facts as presented by the parties, however, when Gagnon arrived, the events precipitating Ciardiello's arrest had already occurred. Gagnon came on the scene and saw Ciardiello pushed up against her car, with her arms held behind her back by Sexton. (*See* Berlutti Cert. Ex. M at 35-36.) At this point, Ciardiello was restrained, and the events allegedly giving rise to probable cause for her arrest had transpired. Gagnon could not have devined probable cause from events occurring before his arrival on the scene. Gagnon's observation of Ciardiello pinned against her car, therefore, did not provide him with the requisite probable cause necessary for qualified immunity under these circumstances.

Gagnon also relies on the "assist officer" call, allegedly received prior to his arrival on the scene from the police dispatcher, to bolster the objective reasonableness of his probable cause determination. The existence of this "assist officer" call, however, is a material fact in dispute between the parties. While Gagnon states that he received an "assist officer" call on his radio, Ciardiello claims that this call was not reflected in the recorded conversations between Gagnon and the police dispatcher. (Goger Cert. ¶ 25.)

This "assist officer" call appears to be all that Gagnon learned about the events giving rise to Ciardiello's arrest prior to Sexton's oral statements; therefore, its existence is highly relevant to the objective reasonableness of Gagnon's probable cause determination. Since the fact of this call is in dispute, this Court cannot determine that Gagnon is entitled to probable cause at this time.

**C.     Qualified Immunity – Woodbridge**

No independent argument for qualified immunity is advanced on behalf of Defendant Woodbridge. Instead, Woodbridge argues that it is entitled to qualified immunity "by extension."[4] (Reply Br. in Further Support of [Gagnon and Woodbridge's] Motion for Summary Judgment at 3.) Since this Court has determined that Gagnon is not entitled to qualified immunity, Woodbridge's request is necessarily denied as well. In

---

[4] This argument was raised for the first time by Woodbridge in its reply brief. As the parties are aware, a reply brief is not the proper forum to raise new issues; instead, it is intended only to allow a party to respond to issues raised in the response brief. *See United States v. Martin*, 454 F. Supp. 2d 278, 281 n. 3 (E.D. Pa. 2006); *Ballas v. Tedesco*, 41 F. Supp. 2d 531, 533 (D.N.J. 1999).

7

addition, this Court notes that the United States Supreme Court has held that municipalities are not entitled to qualified immunity. *Owen v. City of Independence*, 445 U.S. 622, 650 (1980); *see also Grant v. City of Pittsburgh*, 98 F.3d 116, 126 n.7 (3d Cir. 1996).

**IV.     CONCLUSION**

In conclusion, the Court Defendants' Motion for Reconsideration is **DENIED**. An Order accompanies this Letter Opinion.

/s/ William J. Martini
**William J. Martini, U.S.D.J.**